## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cv-80664-KMM
Case No. 10-bk-03455-PGH

UNITED STATES OF AMERICA,

      Appellant / Cross-Appellee,

vs.

DEBORAH C. MENOTTE, Trustee,

      Appellee / Cross-Appellant.

_____/

## ORDER

THIS CAUSE is before the Court on cross-appeals from the Order on Final Judgment, which was entered by the Bankruptcy Court on April 25, 2012.[1] Both Parties filed Initial Briefs (ECF Nos. 7, 9), Responses (ECF Nos. 11, 12), and Replies (ECF Nos. 13, 14). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001. For the reasons stated herein, the Bankruptcy Court's Order is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this Order.

### FACTUAL BACKGROUND

In 2006, Brian Denson formed Custom Contractors, LLC (the "Debtor"), a single-member limited liability company operating in the commercial construction business. The Debtor, as well as Denson's other construction companies, was a Subchapter S corporation for tax purposes which meant that that it did not pay federal income tax. The Debtor's tax liability

---

[1] Both Parties appealed the Bankruptcy Court's Order on Final Judgment. Deborah Menotte filed a separate appeal which was subsequently consolidated with the instant matter. See Case No. 12-CV-80665 (ECF No. 10).

passed through to Denson, who was required to report the Debtor's tax liability on his personal income tax return. Denson would pay his personal taxes which were attributable to the Debtor by a company check payable to the Internal Revenue Service ("IRS"). These payments were reflected as distributions to Denson on the Debtor's records. Denson would also pay the tax due on his salary through withholding. Throughout 2007 and 2008, Denson caused the Debtor to issue eight payments to the IRS for, *inter alia*, estimated tax payments for Denson's personal taxes. As a result of the Debtor operating at a loss in 2008, Denson requested and received a refund of the 2008 estimated tax payments that the Debtor made on his behalf. Denson, however, did not return the refunded 2008 estimated tax payments to the Debtor.

On July 15, 2009, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code.[2] Subsequently, Deborah C. Menotte (the "Trustee") was appointed as trustee for the Debtor's estate. On July 29, 2010, the Trustee filed an adversary proceeding against the Government alleging under various theories of federal and state law that the eight payments made by the Debtor to the IRS for the personal tax liability of Denson were both fraudulent and constructively fraudulent transfers.[3]

On January 5 and 6, 2012, the Bankruptcy Court held a two day trial in the adversary proceeding. On April 25, 2012, the Bankruptcy Court entered the Order on Final Judgment (ECF No. 1, at 4) and Findings of Fact and Conclusions of Law (the "Opinion") (ECF No. 2-13, at 545). The Bankruptcy Court found that the last payment, which occurred on September 15,

---

[2] Denson also operated two other construction firms which ceased operations between 2007 and 2009. Additionally, Denson has filed a voluntary petition under Chapter 7. See Jan. 5, 2012 Hr'g Tr., at 137.

[3] The Complaint in the adversary proceeding alleged that the following payments were subject to avoidance: (1) $73,801.00 on April 16, 2007; (2) $22,110.00 on April 16, 2007; (3) $22,110.00 on June 1, 2007; (4) $24,380.00 on April 1, 2008; (5) $2,644.00 on April 9, 2008; (6) $26,380.00 on June 3, 2008; (7) $151.25 on June 30, 2008; and (8) $26,380.00 on September 15, 2008.

2008, was a constructively fraudulent transfer because it was made while the Debtor was insolvent and the Debtor did not receive reasonably equivalent value. Therefore, the Trustee could recover the avoided transfer in the amount of $26,380 from the Government. The Bankruptcy Court further determined that the IRS did not qualify for a defense by acting as a "mere conduit." The remaining seven payments were not fraudulent or constructively fraudulent transfers because the Trustee failed to prove that the Debtor was insolvent or had unreasonably small capital.

Both the Trustee and the Government now appeal the Bankruptcy Court's Order on Final Judgment and present the following issues:[4]

(1) Whether the Bankruptcy Court erred in determining that the seven transfers to the IRS were not constructively fraudulent because the Debtor was not operating with unreasonably small capital?

(2) Whether the Bankruptcy Court erred in determining that the IRS was an initial transferee and did not qualify for the conduit defense?

## DISCUSSION

A. Standard of Review

"The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, 'but reviews a bankruptcy court's legal conclusions de novo.'" In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996). "Under de novo review, [a] Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." In re Brown, No. 6:08-

---

[4] "It is well settled in this circuit that an argument not included in the appellant's opening brief is deemed abandoned." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 972 (11th Cir. 2008) (citing Asociacion de Empleados del Area Canalera v. Panama Canal Comm'n, 453 F.3d 1309, 1316 n.7 (11th Cir. 2006)).

CV-1517-ORL-18DAB, 2008 WL 5050081, at *2 (M.D. Fla. Nov. 19, 2008) (citing In re Piper Aircraft Corp., 244 F.3d 1289, 1295 (11th Cir. 2001)). The Bankruptcy Court's findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. FED. R. BANKR. P. 8013. The findings of a bankruptcy judge are accorded the same weight as the findings of a district judge under Fed. R. Civ. P. 52. A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court upon examining the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (U.S. 1948). If the lower court's assessment of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Anderson v. Bessemer City, 470 U.S. 564, 573-574 (U.S. 1985). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Id. Mixed questions of law and fact are also reviewed de novo. In re Lentek Int'l. Inc., 346 Fed. App'x 430, 433 (11th Cir. 2009).

> B.    The Bankruptcy Court's Determination That the Debtor Was Not Operating with Unreasonably Small Capital When the First Seven Payments Were Made to the IRS in 2007 and the First Two Quarters of 2008

The Trustee argues the Bankruptcy Court erred in determining that the Debtor was not operating with unreasonably small capital in 2007 and the first two quarters of 2008. The Trustee claims that the undisputed facts at trial proved that the Debtor was operating with unreasonably small capital at the time of the transfers. Trustee Br., at 16. Additionally, the Trustee argues that the Bankruptcy Court erred in failing to consider relevant evidence. Trustee

Br., at 12.   A review of the Bankruptcy proceedings and the Opinion belies any of these contentions.

The Bankruptcy Code "gives the bankruptcy trustee the ability to avoid fraudulent transfers under § 548 and to recover the value of those transfers from 'initial transferees' under § 550(a)(1)."   Martinez v. Hutton (In re Harwell), 628 F.3d 1312, 1317 (11th Cir. 2010).   In Counts III and IV of the Complaint, the Trustee brought claims for constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B), Fla. Stat. § 726.105(1)(b), and Fla. Stat. § 726.106(1).   In order for a transaction to be subject to avoidance under these statutes, the Trustee must show that the Debtor received less than reasonably equivalent value and either: (1) that the Debtor was insolvent at the time of the transaction; (2) that the Debtor became insolvent as a result of the transaction; or (3) the Debtor was engaged or was about to engage in business with unreasonably small capital.[5]   In re Pearlman, No. 09-AP-00715, 2011 WL 1783805, at *4 (Bankr. M.D. Fla Apr. 26, 2011).   The similarities between these statutes allows a reviewing court to analyze these claims together.   See In re Venice-Oxford Assocs., 236 B.R. 820, 834 (Bankr. M.D. Fla. 1999) (analyzing transfers under Fla. Stat. § 726.105 and § 726.106 contemporaneously with 11 USC § 548); see also Freeman v. First Union Nat., 329 F.3d 1231, 1233 (11th Cir. 2003).   Additionally, "[n]o rigid approach should be taken regarding the fair valuation of a company within the context of solvency analysis, but rather courts should consider the totality of the circumstances."   In re Iridium Operating, LLC, 373 B.R. 283 (Bankr. S.D.N.Y. 2007) (citing Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.), 78 F.3d 30, 38 (2d Cir.

---

[5] The Bankruptcy Court concluded that the Debtor was not insolvent until September 2008 based on the testimony of the Trustee's expert and Denson.  Opinion, at 14–15; see also Jan. 5, 2012 Hr'g Tr., at 19–20 (ECF No. 2-13, at 36) (Trustee's expert stating that the Debtor "became insolvent during the third quarter of 2008").  Therefore, this appeal only concerns whether the Debtor was operating with unreasonably small capital when all of the payments were made.

1996)).  "The term 'unreasonably small capital' denotes a financial condition short of insolvency, and the "unreasonably small capital" test of financial condition is 'aimed at transferees that leave the transferor technically solvent but doomed to fail.'" Kipperman v. Onex Corp., 411 B.R. 805, 836 (N.D. Ga. 2009) (quoting MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co., 910 F. Supp. 913, 944 (S.D.N.Y. 1995)).  Additionally, it has been defined as "having at that moment such meager assets that bankruptcy is a consequence both likely and foreseeable." Boyer v. Crown Stock Distrib., Inc., 587 F.3d 787 (7th Cir. 2009) (citing Moody v. Sec. Pac. Bus. Credit, 971 F.2d 1056, 1069–70 (3d Cir. 1992)).

First, this Court finds that the Bankruptcy Court did not err in determining that the Debtor was not operating with unreasonably small capital during the relevant period.  For the payments that were made during 2007, the Bankruptcy Court properly evaluated the Trustee's evidence, including the expert testimony of Alan R. Barbee ("Barbee"), but discredited it.  The Bankruptcy Court offered clear and convincing support for its determination that it was "not persuaded that the Debtor was left with unreasonably small capital after the 2007 Payments given the Debtor's $679,959 profit and $730,153 working capital as reported by [the Trustee's] expert after he made hundreds of thousands of dollars of downward revisions to the Debtor's December 31, 2007 financial statements." Opinion, at 15–16.  Moreover, the Bankruptcy Court directly questioned Barbee to confirm the capitalization of the Debtor.  Jan. 6, 2012 Hr'g Tr., at 315 (ECF No. 2-13, at 302).  This Court finds no error in the Bankruptcy Court's analysis or determination which relied on the Debtor's capitalization.

Likewise, this Court cannot find error in the Bankruptcy Court's determination that the Debtor did not have unreasonably small capital when the payments were made in the first two quarters of 2008.  Although the Bankruptcy Court found this determination to be a "closer

question," it properly evaluated the evidence to reach its conclusion. Opinion, at 16. First, the Bankruptcy Court rejected the Trustee's argument that the inadequacy of the Debtor's capitalization can be shown by the fact that Denson initially capitalized the Debtor in 2006 with only $1,000. Trustee Br., at 9. The Bankruptcy Court stated that "having found that the Debtor was adequately capitalized when the 2007 Payments were made, finds that whether the Debtor was initially capitalized with $1,000 in 2006 is irrelevant to the adequacy of the Debtor's capitalization when the 2008 Payments were made." Opinion, at 17. Such a determination is an entirely appropriate decision for a fact-finder and was supported by other evidence, such as the Debtor's financials and Denson's testimony. See Jan. 5, 2012 Hr'g Tr., at 183–87.

Additionally, the record indicates that the Bankruptcy Court adequately considered and discredited Barbee's testimony in certain areas. Indeed, the Bankruptcy Court noted that "[t]o the extent that [the expert's] opinion is based upon the need for additional capital because of the risk of being in the construction industry in the middle of a downturn, it appears to suffer from the influence of hindsight bias." Opinion, at 18. In reaching this conclusion, the Bankruptcy Court gave deference to Denson's testimony that he did not feel financial pressure until late 2008. Opinion, at 14–15, 20; see also Jan. 5, 2012 Hr'g Tr., at 183–87. Additionally, the Bankruptcy Court considered Barbee's analysis of financial ratios for the Debtor but determined that "[t]he usefulness of Barbee's comparisons is questionable." Opinion, at 19. The Bankruptcy Court came to this conclusion because the analysis of ratios compared the Debtor to other companies which were not similar to the Debtor, unexplainably eliminated some comparable companies, and lacked relevant information about the companies being compared. Opinion, at 18–19. This discounting of evidence is entirely appropriate considering the Trustee had the burden of proving the Debtor had unreasonably small capital. In re Kane & Kane, 479 B.R. 617,

631 (Bankr. S.D. Fla. 2012) ("The Trustee has the burden of proving all aspects of the alleged fraudulent transfers under §§ 548 and 550(a)(1) and the parallel Florida statutes."); In re Stewart, 280 B.R. 268, 274 (Bankr. M.D. Fla. 2001) (holding that a trustee had not met her burden under § 548 of the Bankruptcy Code or § 726.105 of the Florida Statutes).[6]

While considering and discrediting Barbee's comparisons, the Bankruptcy Court did find his report probative in that it reflected the Debtor had "working capital of $528,566 on March 31, 2008, was not left with unreasonably small capital by virtue of making the April 1, 2008 payment of $26,380 or the April 9, 2008 payment of $2,644, the June 3, 2008 payment of $26,380 or the June 30, 2008 payment of $151.25." Opinion, at 21. "Indeed Barbee's report showed that on June 30, 2008 after all of these payments had been made the Debtor still had working capital in the amount of $266,323 and no bank debt." Opinion, at 21. The Bankruptcy Court relied on Barbee's analysis to make this decision even after Barbee adjusted the Debtor's financials. Thus, the Bankruptcy Court determined that the Debtor did not have unreasonably small capital because of its working capital, access to credit, and lack of bank debt. Opinion, at 20–21. This Court cannot find that such a determination is clearly erroneous. See In re Int'l Pharmacy & Disc. II, Inc., 443 F.3d 767, 770 (11th Cir. 2005).

In order to avoid the clearly erroneous standard of review, the Trustee attempts to argue that the Bankruptcy Court erred as a matter of law by failing to consider relevant evidence. Trustee Reply, at 2–4. The Trustee argues that her "evidence of initial capitalization of the Debtor and the[] industry factors showing the debtor was doomed to fail merits a proper look and all due consideration of these undisputed facts." Trustee Reply, at 3. This claim is simply

---

[6] Additionally, this Court rejects the Trustee's claim that since Barbee's testimony was undisputed, the Bankruptcy Court erred in its determination. Trustee Br., at 11–12. The Trustee had the burden of proving her claims and the Bankruptcy Court found that she did not.

without merit.   First, the Trustee has not pointed to any error that as a matter of law requires reversal. Her attempt to argue that Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.), 680 F.3d 1298 (11th Cir. 2012), supports her position that the "upcoming downturn of this industry was entirely foreseeable and does not reflect 'hindsight bias.'" fails.  Trustee Reply, at 3.[7]   Second, contrary to the Trustee's assertions, the Bankruptcy Court properly evaluated all of the evidence.  The Trustee blurs the distinction between a refusal to consider evidence and discrediting evidence based upon the record.   For example, the Bankruptcy Court did not find that a firm's initial capitalization is always irrelevant, it simply stated that under the facts of the instant matter, the initial capitalization was not probative of the Debtor's later capitalization based on other evidence introduced at the trial.  Opinion, at 17. Such a determination is entirely appropriate for a fact finder.   See In re Hunjan Moulded Products (Ala.) Ltd., Inc., 292 Fed. App'x 855, 858 (11th Cir. 2008).   Additionally, the Bankruptcy Court considered the relevant evidence and determined that Barbee's conclusions in his report suffered "from the influence of hindsight bias." Opinion, at 18.  There is no indication in the record that the Bankruptcy Court rejected, let alone failed to consider, the relevant market conditions.  The Bankruptcy Court relied on the Debtor's capital computations, which even after Barbee's downward adjustments, showed that it was not operating with unreasonably small capital.  Thus, the Bankruptcy Court relied on the figures provided and discredited Barbee's ultimate conclusion of capital inadequacy because it was influenced by the Debtor's eventual

---

[7] In In re TOUSA, Inc., the Eleventh Circuit held that a bankruptcy court did not clearly err when determining that a transaction did not produce reasonably equivalent value for debtor-subsidiaries.  In making this determination, the Eleventh Circuit found the bankruptcy court's decision was well-informed since it relied on, inter alia, a thorough review of public knowledge, expert analysis, and statements by corporate insiders to determine that the debtor-parent's bankruptcy was inevitable after undergoing the transaction.  Id. at 1312–13.  The differences between In re TOUSA, Inc., and the instant matter are extensive.  Therefore, this Court finds that In re TOUSA, Inc. does not support the Trustee's position.

collapse. Contrary to the Trustee's assertions, the Bankruptcy Court did not find that all market conditions should be excluded from this determination. Thus, the Trustee has not established that the Bankruptcy Court erred as a matter of law.

After reviewing the record in this case, the Bankruptcy Court's determination is well supported by the record and the Bankruptcy Court did not clearly err in determining that the Debtor was not operating with unreasonably small capital during 2007 and the first two quarters of 2008.

> C.   The Bankruptcy Court's Determination That the Government Did Not Qualify for the Conduit Defense and Was Liable as an Initial Transferee under Section 550(a)

Once a court determines that a transaction is subject to avoidance under Section 548 or the equivalent Florida laws, the court "must then look to Bankruptcy Code section 550 to determine the liability of the transferee of the avoided transfer." In re McCarn's Allstate Fin., Inc., 326 B.R. 843, 852 (Bankr. M.D. Fla. 2005). Section 550 provides that "to the extent that a transfer is avoided under section 544 [or] . . . 548, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer . . . ." 11 U.S.C. § 550(a)(1). Here, the Bankruptcy Court determined that the September 15, 2008 payment was subject to avoidance because it was made while the Debtor was insolvent and the Debtor did not receive reasonably equivalent value. Opinion, at 15.[8] Additionally, the Bankruptcy Court determined that since the aforementioned transfer was subject to avoidance, the IRS was liable as an initial transferee. Opinion, at 21.[9]

---

[8] The Government has not appealed either of these determinations. See Government Br., at 1.

[9] The "literal or rigid interpretation of the statutory term 'initial transferee' in § 550(a) means that the first recipient of the debtor's fraudulently-transferred funds is an 'initial transferee.'" In re Harwell, 628 F.3d at 1322 (quoting Nordberg v. Societe Generale (In re Chase & Sanborn Corp.) ("Nordberg"), 848 F.2d 1196, 1199–1200); see also In re Kane & Kane, 479 B.R. 617, 631–32 (Bankr. S.D. Fla. 2012) (rejecting claim by the IRS that it was not the initial transferee

The Bankruptcy Court found that although there was no evidence that the IRS acted in bad faith,[10] the IRS could not avail itself of the conduit defense because it exercised sufficient control and dominion over the payment.  Opinion, at 25–27.  The Bankruptcy Court recognized the dilemma that this result produced, causing the IRS to be liable twice for the refunded amount, but stated that it was bound by Eleventh Circuit precedent in its construction of the conduit defense.  Opinion, at 25–27.

The Government argues the Bankruptcy Court erred in finding that it exercised dominion and control over the transfer and thus was ineligible for the conduit defense.  Government Br., at 6.  First, the Government claims that the Bankruptcy Court erred in relying on 26 U.S.C. § 6402 to conclude that the IRS had discretion over the transferred funds.  Government Br., at 11. Additionally, the Government argues the Bankruptcy Court erred in its determination that control was established since the payment was commingled with other funds and immediately accessible for use by the government.  Government Br., at 11.  The Government also alleges that the Bankruptcy Court mechanically applied the conduit defense when it failed to consider equitable principles in the instant matter.  Government Br., at 23.  This Court addresses each of these arguments in turn.

The Eleventh Circuit has "carved out an equitable exception to the literal statutory language of 'initial transferee,' known as the mere conduit or control test, for initial recipients

---

within the meaning of section 550); United States v. Moyer (In re Moyer In re Regency Int'l Flooring, LLC), No. 09-CV-1146, 2010 WL 4053982 (W.D. Mich. Oct. 14, 2010) (same).

[10] Despite the Trustee's argument that the Bankruptcy Court erred in finding good faith, the Trustee failed to appeal this determination.  Moreover, this Court finds that the Trustee's arguments concerning bad faith are without merit.  Trustee Resp., at 8.  The Trustee's evidence at trial that the IRS would negotiate a check from Mickey Mouse if it was accompanied by a payment voucher does not negate the good faith of the IRS.  Jan. 6, 2012 Hr'g Tr., at  277–79; see also In re Fla. Mfg. Distrib., No. 11-02506, 2012 WL 5387788, at *8 (Bankr. S.D. Fla. Nov. 2, 2008) (stating that "knowing the identity of the transferor, and even being aware of the transferor's financial difficulties, is insufficient to establish bad faith").

who are 'mere conduits' with no control over the fraudulently-transferred funds." In re Harwell, 628 F.3d at 1322 (citing Nordberg v. Sanchez (In re Chase & Sanborn Corp.), 813 F.2d 1177, 1178–80 (11th Cir. 1987)).  The conduit defense states that "initial recipients of the debtor's fraudulently-transferred funds who seek to take advantage of equitable exceptions to § 550(a)(1)'s statutory language must establish (1) that they did not have control over the assets received, i.e., that they merely served as a conduit for the assets that were under the actual control of the debtor-transferor, and (2) that they acted in good faith and as an innocent participant in the fraudulent transfer." Id. at 1323.

When evaluating whether an initial transferee qualifies for this defense, the Eleventh Circuit has "adopted a flexible, pragmatic, equitable approach of looking beyond the particular transfer in question to the circumstances of the transaction in its entirety." Id. at 1322 (citing Andreini & Co. v. Pony Express Delivery Servs., Inc. (In re Pony Express Delivery Servs., Inc.), 440 F.3d 1296, 1302 (11th Cir. 2006); IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.), 408 F.3d 689, 705 (11th Cir. 2005); Nordberg, 848 F.2d at 1199).  This approach was adopted because the "mere conduit or control test is a judicial creation that is not based in statutory language, but is an exception based on the bankruptcy courts' equitable powers."  Id. (citing Nordberg, 848 F.2d at 1199).

Here, this Court finds that the Bankruptcy Court incorrectly determined that the IRS did not qualify for the conduit defense by strictly construing Eleventh Circuit precedent.  Although the Bankruptcy Court's strict adherence to precedent is commendable, the principles underlying

12

the equitable approach adopted by the Eleventh Circuit, when looking at the transaction in its entirety, would extend the conduit defense to the present situation.[11]

First, the Bankruptcy Court relied on 26 U.S.C. § 6402 to determine that the IRS had discretion over the funds and was not eligible for the conduit defense. Opinion, at 26. Section 6402 contains a statutory right of offset which allows the IRS to credit against a refund the amount a taxpayer owes for past taxes.[12]   In the instant matter, however, the IRS had no discretion in whether to accept the payment on behalf of Denson or to refund the payment to him.[13]  The IRS must accept payments on behalf of a tax payer and acts with no discretion. See Jan 5, 2012 Hr'g Tr., at 275–76.   Additionally, each payment made by the Debtor was accompanied by a tax voucher which indicated that the payment was for Denson's tax liability. See Jan. 5, 2012 Hr'g Tr., at 191–92.   Thus, when Denson had no tax liability for 2008 and no prior tax liabilities, the IRS was legally obligated to refund the prepayment to Denson when he requested a refund.   Denson, however, then exercised discretion when choosing not to return the money to the Debtor.   See Jan. 5, 2012 Hr'g Tr., at 106.   When looking at this transaction in its entirety, the IRS exercised no discretion and the mere fact that Section 6402 allows an offset in

---

[11] This Court's review of federal case law—as well as the Bankruptcy Court's and the Parties' independent reviews—reveals no case that has allowed a trustee to use Section 550(a) to recover a debtor's transfer of money to the IRS after the IRS has already refunded the money to a taxpayer.  See also In re Regency Int'l Flooring, LLC, 2010 WL 4053982, at *7.

[12] "In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person."  26 U.S.C. § 6402(a).

[13] "The requirement that claims for tax refunds be made by taxpayers rather than by the entity that remitted the taxes on behalf of the taxpayer is well-understood. For example, although an employer withholds income tax from wages and remits them directly to the IRS on behalf of a taxpayer, any refund of an overpayment is made to the taxpayer rather than to the employer." In re Regency Int'l Flooring, 2010 WL 4053982, at *6.

certain situations does not preclude the determination that the IRS was acting as a mere conduit when receiving and refunding a payment at the direction of the Debtor.[14]

Additionally, applying the flexible approach advocated by the Eleventh Circuit, see In re Harwell, 628 F.3d at 1322, this Court finds that the IRS did not exercise sufficient control over the payment. The Bankruptcy Court relied upon the fact that the IRS immediately deposits the payments into the Treasury for general use by the Government. Opinion, at 26. Additionally, the Bankruptcy Court found persuasive that the payments are commingled with other funds and are not segregated into separate accounts according to their origin. Opinion, at 26. Here, the transfer was simply a prepayment for Denson's estimated tax liability which could not be determined until the end of the tax year. The Debtor, however, operated at a loss in 2008 which resulted in a tax refund. Although this transaction technically resulted in a debt, Eleventh Circuit precedent overlooks technicalities to the overall structure of a transaction in its conduit analysis. See Nordberg, 848 F.2d at 1200–01 (rejecting the facial appearance that an overdraft created a debt for purposes of determining whether a bank was an initial transferee under Section 550(a)).

When analyzing the transaction in its entirety, the IRS was acting as an intermediary which held the funds until Denson's tax liability could be assessed. When Denson had no tax liability, the IRS simply transferred the funds as the Debtor instructed.[15] Although the Trustee argues that the IRS used the funds between the payment and refund and Denson had no ability to

---

[14] The district court in In re Regency Int'l Flooring similarly found that the Bankruptcy Court erred in its interpretation of Section 6402 by analyzing the provision in isolation without considering the larger tax and regulatory structure and its application to the facts of the matter before the court. 2010 WL 4053982, at *6–7.

[15] All cases where the conduit exception has been applied "involve an innocent and uninvolved link in the chain between the debtor and the ultimate recipient of the avoided transfer. The conduit exception protects the innocent and uninvolved link from strict liability for the avoided transfer and places that liability on the next link in the chain." In re Toy King, 256 B.R. 1, 145 (M.D. Fla. 2000). Here, this was in essence a three-party transaction with the IRS being the middleman between Denson and the company that he controlled, the Debtor.

access the funds, this Court finds that the IRS did not exercise sufficient control over the assets.
See In re Regency Int'l Flooring, 2010 WL 4053982, at *7 (stating that "the Court believes that
the best conceptual approach to explaining why the trustee cannot recover the amount of the
overpayment that was already refunded to the taxpayer is to understand that the IRS never had
dominion and control over the amount of the overpayment").[16]  Applying a strict application of
the exception to the present situation would result in an illogical outcome where the IRS is in
essence liable twice for the payment—once for the refunded amount to Denson and then to the
Trustee under Section 550(a) for the Debtor's original transfer of money to the IRS.  Such an
illogical result is exactly the rationale for creating an equitable exception for entities merely
acting as a conduit between parties.  See Nordberg, 848 F.2d at 1199 ("The control test, then, as
adopted by this circuit, simply requires courts to step back and evaluate a transaction in its
entirety to make sure that their conclusions are logical and equitable.").

Although the Trustee is correct that the conduit defense typically applies to transactions
involving agents or fiduciaries,[17] the actions of the IRS with tax payments, which are heavily
regulated by statute, should not preclude application of this equitable doctrine.[18]  The conduit
defense is typically applied to protect entities who are not in the proper situation to evaluate a
parties' solvency, while technically being an initial transferee.  In re Harwell, at 1322–23 (stating
that "we have tempered literal application of § 550(a)(1), examining all the facts and

---

[16] Additionally, the amount of time the funds are with an entity is not dispositive for the conduit
defense.  See In re Pony Express Delivery Servs., 440 F.3d at 1303 (finding that a transferee who
had access to the funds for three weeks could avail itself of the conduit defense and stating "the
length of this period should not have dispositive significance").
[17] "Commercial banks are the most prevalent example of conduits, although steamship agents,
real estate escrow and title companies, securities or investment brokers, and attorneys have also
been found to be conduits." In re Toy King, 256 B.R. at 145 (citations omitted).
[18] As a bankruptcy court recently noted, Eleventh Circuit precedent "does not say that an agency
or fiduciary relationship is a requirement for this equitable defense to apply."  In re Fla. Mfg.
Distrib., 2012 WL 5387788, at *5 (emphasis in original).

circumstances surrounding a transaction to prevent recovery from a transferee innocent of wrongdoing and deserving of protection"). Imposing a duty of due diligence on the IRS to investigate the solvency of entities making payments and the relationship to a tax payer would essentially cripple the efficiency of the IRS. See Nordberg, 848 F.2d at 1202 (refusing to find that a bank was an initial transferee based on a wire payment because "it would impose an unfair burden on the banks and would severely impair the wire transfer system").[19]  Additionally, a strict application would ignore the unique role of the IRS within the federal government of collecting taxes, funding the Treasury, and processing refunds.[20]  Failure to extend the equitable defense to this logical result would further invite fraud on the IRS by firms on the brink of bankruptcy.  See In re Regency Int'l Flooring, Inc., 2010 WL 4053982, at *7.  Even worse, strictly applying the exception would require the IRS—and the taxpayers at large—to fund the Debtor's estate. Id.

Eleventh Circuit precedent supports this Court's determination that the IRS, after already refunding an overpayment to a taxpayer, should not be liable under Section 550(a) to remit the amount of the tax payment to a trustee for a debtor who made the payment on behalf of the taxpayer.[21]  Therefore, this Court holds that the Bankruptcy Court erred in determining that the

---

[19]  The purpose of fraudulent conveyance law is to protect "creditors from last-minute diminutions of the pool of assets in which they have interests." Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 892 (7th Cir. 1988). Thus, exposing the IRS to "the risk of disgorging a 'fraudulent conveyance' in such circumstances would lead [it] to take precautions, the costs of which would fall on solvent customers without significantly increasing the protection of creditors." Id. at 893.

[20]  "Equitable considerations play a major role in the mere conduit or control test because it would be inequitable to hold an initial recipient of the debtor's fraudulently-transferred funds liable where that recipient could not ascertain the transferor debtor's solvency, lacked any control over the funds, or lacked knowledge of the source of the funds." In re Harwell, 628 F.3d at 1322 (citing Nordberg, 848 F.2d at 1199–1902).

[21]  This decision, which is limited to the instant facts, does not exonerate the IRS from all liability as an initial transferee. As the Government acknowledges, if the IRS would have retained the

16

IRS was liable as an initial transferee under Section 550(a) and did not qualify for the conduit defense.

## CONCLUSION

In light of the foregoing, the Bankruptcy Court's Order on Final Judgment, which was entered by the Bankruptcy Court on April 25, 2012, is hereby AFFIRMED IN PART, REVERSED IN PART, and REMANDED for proceedings not inconsistent with this Order. The Bankruptcy Court did not err when it determined that the Debtor was not operating with unreasonably small capital during 2007 and the first two quarters of 2008. The Bankruptcy Court, however, erred in determining that the IRS was liable as an initial transferee because it did not qualify for the conduit defense.

The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 19th day of November, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

---

money or offset another debt than "the IRS would have been not only a recipient of the estimated tax payment but also the liable transferee." Government Reply, at 8.